**United States District Court**
For the Northern District of California

1

2
IN THE UNITED STATES DISTRICT COURT

3
FOR THE NORTHERN DISTRICT OF CALIFORNIA

4
ARMANDO A. MARROQUIN,                    No. C 09-3841 SBA (PR)

5
       Plaintiff,                    **ORDER DENYING PLAINTIFF'S**
                                         **RENEWED MOTION FOR**
6
  v.                                    **APPOINTMENT OF COUNSEL; AND**
                                         **GRANTING DEFENDANTS' MOTIONS**
7
OFFICER T. GRADY, et al.,                **FOR SUMMARY JUDGMENT**

8
       Defendants.
_____/      (Docket nos. 16, 27, 36)
9

10
**INTRODUCTION**

11
    Plaintiff Armando A. Marroquin, a state prisoner incarcerated at the La Palma Correctional

12
Center in Eloy, Arizona, filed this 42 U.S.C. § 1983 action alleging constitutional violations stemming

13
from his incarceration at Salinas Valley State Prison ("SVSP") in 2008.  In his complaint, Plaintiff

14
named SVSP Warden Mike Evans and Correctional Officers T. Grady,[1] J. Recio, and Montano as

15
party-defendants.  Plaintiff's claims arise from an incident on March 4, 2008, in which he and his then

16
cellmate G. Rodriguez were involved in an altercation.  Plaintiff alleges that Defendants ignored his

17
requests for help both before and during the attack.  He further alleges that Defendants were

18
deliberately indifferent to his serious medical needs after the attack.  Thus, Plaintiff has asserted Eighth

19
Amendment claims of deliberate indifference to safety and deliberate indifference to serious medical

20
needs resulting from Defendants' actions.

21
    The parties are presently before the Court on Plaintiff's renewed motion for appointment of

22
counsel and Defendants' motions for summary judgment.  Having read and considered the papers filed

23
in connection with this matter, and being fully informed, the Court hereby DENIES Plaintiff's renewed

24
motion for appointment of counsel and GRANTS Defendants' motions for summary judgment as to

25
Plaintiff's federal claims.  The Court declines to assert supplemental jurisdiction over Plaintiff's state

26
law claims, which are dismissed without prejudice.

27
_____

28
    [1] The Court notes that in some places in the record, including in Plaintiff's Complaint, Officer Grady is incorrectly referred to as "Officer Gready."  However, the correct spelling is "Grady."  (Grady Decl. ¶ 1.)

**United States District Court**
For the Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**BACKGROUND**

**I.     Factual Summary**

The following facts are undisputed unless otherwise noted.

Plaintiff has been, at all times relevant to this action, a state prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR").  (Compl. at 8.)  At the time of the events at issue, Plaintiff was housed at SVSP.  (Id.)

At the time of the incident on March 2, 2008, Defendants were employees of the CDCR, who worked as correctional officers at SVSP.  (Decl. Grady ¶ 1; Decl. Recio ¶ 1.)  As correctional officers, Defendants were responsible for the safety and security of the inmates at SVSP.  (Decl. Grady ¶ 2; Decl. Recio ¶ 2.)  Defendants' duties include monitoring inmates at the morning "chow," ensuring that inmates who cannot go to the morning "chow" receive their food, ensuring that inmates receive their sack lunches, monitoring the distribution of medicine to inmates, overseeing release to and from the yard, and overseeing day-room activities.  (Decl. Grady ¶ 2; Decl. Recio ¶ 3.)

Plaintiff claims that either on March 2, 2008 or March 3, 2008, he made a request to Defendant Recio to change cells because he feared for his safety.  (Compl. at 4.)  He further states that Defendant Recio said that he would take the matter under consideration as soon as he had an open cell.  (Id.)  Defendant Recio states that he has no recollection of such a request.  (Decl. Recio ¶ 8.)  In addition, Defendant Recio alleges that at no time before Plaintiff's altercation with inmate Rodriguez was he aware that Plaintiff feared for his safety or was in danger.  (Id. at ¶ 4.)

Plaintiff states that on March 4, 2008, he asked inmate Carlos M. Hernandez, who was housed in the adjacent cell, to call the correctional officers because he felt threatened by his cellmate, inmate Rodriguez.  (Compl. at 33.)  Plaintiff alleges that inmate Hernandez immediately went to Defendant Grady and told him that Plaintiff "was having an emergency."  (Id.)  Plaintiff alleges that Defendant Grady ignored his request for help.  (Id.)  In support of his allegation, Plaintiff submits a declaration by another inmate housed nearby, inmate Lopez, who states the following:

> On March 4th, 2008 around 12:30 p.m. I heard my neighbor of cell 129 inmate Marroquin called inmate Hernandez from 130, Marroquin[']s neighbor.  He asked him to call the officer, he had an emergency, to move him from his cell.  Hernandez immediately went to officer Greandy [sic] but the officer only looked toward 129, he

1   did not come to Marroquin to investigate about the emergency.[2]

2   (Id. at 34.)  Inmate Lopez further states that the aforementioned statement is the extent of his

3   knowledge as to what transpired on March 4, 2008.  In his complaint, Plaintiff states that when

4   Defendant Grady looked towards his cell, Plaintiff gestured to Defendant Grady to come to his cell.

5   (Id. at 25.)  However, Defendant Grady allegedly ignored Plaintiff's request.  (Id.)

6        Defendant Grady states that at no time was he made aware of the fact that there was an

7   "emergency" in Plaintiff's cell.  (Decl. Grady ¶ 3.)  Defendant Grady further states that if an inmate had

8   told him that there was an emergency, he would have made further inquiries into the matter.  (Id. at ¶

9   5.)  Defendant Grady also states that inmates frequently state that there is an emergency when there is

10   no danger to their physical safety and that the degrees of inmate emergencies can "vary greatly."  (Id.)

11        Plaintiff alleges that on March 4, 2008 at 12:30 p.m., inmate Rodriguez attacked him and

12   kicked his face and his chest.  (Compl. at 33.)  Plaintiff adds that inmate Rodriguez took his television

13   and threw it at him.  (Id.)  Plaintiff states that during the attack he fell unconscious for several seconds.

14   (Id.)  He further states that he did not respond by striking inmate Rodriguez because inmate Rodriguez

15   is an "old man."  (Id.)  However, Plaintiff claims that he attempted to block inmate Rodriguez's blows

16   during the attack.  (Id.)  Plaintiff states that he was bruised and suffered bleeding as a result of the

17   attack.  (Id.)  Plaintiff claims that when the cell door was opened, inmate Rodriguez ran outside.  (Id.)

18        Meanwhile, Defendant Grady states that on March 4, 2008, at approximately 1:00 p.m., he

19   began to release inmates from their cells to go out into the yard.  (Decl. Grady ¶ 6.)  He claims that

20   when he approached Plaintiff's cell, the cell door was open and inmate Rodriguez quickly exited the

21   cell.  (Id. at ¶ 7; Compl. at 33.)  Defendant Grady states that when he looked into the cell, Plaintiff was

22   sitting on the edge of the lower bunk and "his face looked red."  (Decl. Grady ¶ 7.)  Defendant Grady

23   claims that he then told Plaintiff to stand up and exit his cell.  (Id.)  Defendant Grady states that he

24   handcuffed Plaintiff and took him to the program office in order to conduct inquiry into the matter.

25   (Id.)  Another officer handcuffed inmate Rodriguez and took him to the program office as well.  (Id.)

26

27

28   [2] The Court takes judicial notice of the fact that although inmate Lopez did not sign the
     English translation of his declaration, he did sign the copy of his declaration written in Spanish.
     Therefore, the Court will rely upon the facts set forth in the English translation.

3

United States District Court
For the Northern District of California

1    Defendant Recio states that the altercation between Plaintiff and inmate Rodriguez took place

2  before he arrived at work on March 4, 2008.  (Decl. Recio ¶ 4.)  Plaintiff does not dispute this.

3  (Compl. at 33.)

4    Following the incident, Plaintiff and inmate Rodriguez were both interviewed by Correctional

5  Sergeant K. Johnson.  (Papan Decl., Ex. E.)  Sergeant Johnson prepared an incident report which

6  stated:

> On 03/04/08 at approximately 1305 hours, I interviewed Inmate MARROQUIN, T-86698, B3-129L, and Inmate RODRIGUEZ T-95431, B3-129U, regarding their involvement in mutual combat with one another within their assigned cell B3-129. Medical Evaluations were conducted on both inmate and indicated that neither inmate sustained serious injuries.  I proceeded to interview Inmate MARROQUIN and RODRIGUEZ and both inmates stated the physical altercation was due to a misunderstanding.  They further agreed that they hold no animosity toward each other and can safely coexist on the same facility with no further hostilities between them. Subsequently Inmate RODRIGUEZ will be housed in another building.

12  (Id.)  The incident report was signed by both Plaintiff and inmate Rodriguez.  (Id.)  Additionally,

13  medical staff at SVSP conducted a medical evaluation of Plaintiff.  (Papan Decl., Ex. F.)  In this

14  evaluation, Plaintiff provided the details of the altercation with inmate Rodriguez.  (Id.)  The medical

15  evaluation states that Plaintiff suffered from an abrasion and/or scratch, some bruising, a dislocated

16  finger, cuts to the nose and lip, a reddened knee, and a swollen chin.  (Id.)  The report noted that

17  Plaintiff had no active bleeding or broken bones a result of the incident.  (Id.)

18    In his amendment to the complaint, Plaintiff alleges that Defendants Grady and Recio "refused

19  to act to abate [his] ongoing suffering."  (Am. to Compl. at 3d.)  Plaintiff claims that after the incident

20  on March 4, 2008, he was "suffering from severe pain" as a result of his injuries.  (Id.)  However, he

21  claims that Defendants refused to provide him with the medical care that he needed in spite of the fact

22  that he "requested every day to be taken to a hospital."  (Id. at 3e.)  In his opposition to Defendants'

23  supplemental motion for summary judgment, Plaintiff states that he waited almost twenty-four days to

24  submit a medical request form because Defendants refused to provide such a form.  (Opp'n to Supp.

25  MSJ at 2.)  Plaintiff states that he filed a request for reasonable modification or accommodation or

26  CDC form 1824 on March 27, 2008.  (Am. to Compl. at 3.)  In this form, Plaintiff asked for an

27  examination by a specialist, an MRI of his lower back and of his head, a primary care provider and

28  medication for his pain.  (Id. at 8.)  Four days after this request was submitted, Plaintiff was

1    interviewed by Nurse Fox, who explained to Plaintiff the procedure by which he could see a primary

2    care provider -- by requesting medical care through submitting a CDC form 7362, which Nurse Fox

3    gave to him.  (Papan Supp. Decl., Ex. D.)  Plaintiff filled out the form and submitted it that same day.

4    (Id.)  Plaintiff states that he still did not receive any medical care after submitting the form.  (Am. to

5    Compl. at 3e.)  He also claims that he ultimately received no treatment at all for his injuries and that his

6    suffering lasted almost two months.  (Id.)

7         In his supplemental declaration, Defendant Grady states that he has "no recollection of

8    [Plaintiff] requesting medical attention before or after the March 4, 2008 incident."  (Supp. Decl.

9    Grady ¶ 12.)  Additionally, Defendant Grady alleges that he does not remember Plaintiff ever reporting

10   any pain.  (Id.)  Defendant Grady further states that if an inmate expresses a need for medical attention,

11   his usual practice is to "immediately call medical staff to come to the unit and evaluate his needs."

12   (Id.)  He additionally alleges that the duties of a correctional officer at SVSP do not include providing

13   an inmate with medical attention or care.  (Id. at ¶ 13.)

14        Defendant Recio states that Plaintiff never personally asked him to go to the hospital.  (Supp.

15   Decl. Recio ¶ 6.)  He further states that as a correctional officer, he is not responsible for deciding

16   whether or not an inmate goes to the hospital.  (Id.)  Defendant Recio claims that if an inmate had

17   asked him to go to the hospital, he would have further inquired as to the inmate's health needs.  (Id. at ¶

18   7.)  Defendant Recio states that if he then found that the inmate needed urgent medical care, he would

19   have contacted a medical professional immediately and requested that the medical professional attend

20   to the inmate.  (Id.)  However, he claims that if the situation is not urgent, his usual practice is to

21   provide the inmate with the proper form to request medical attention, such as the CDC form 7362

22   mentioned above.  In his supplemental declaration, Defendant Recio further explains the many ways

23   inmates can access medical care at SVSP:

24            (1) the inmate can submit a CDC 7362 to request medical care; (2) an inmate out on
            the exercise yard can visit the medical clinic or medication line with permission from a
25            correctional officer; or (3) the inmate can talk to medical staff who usually visit the
            housing units two times each day to distribute medications and consult with inmates.
26
     (Id. at ¶ 8.)
27
          On March 30, 2008, Plaintiff submitted a 602 inmate appeal form (No. 08-01813) regarding
28
     the March 4, 2008 incident.  (Papan Decl., Ex. B.)  In this appeal, Plaintiff asserted that his Eighth

5

Amendment rights had been violated when correctional officers failed to come to his help when he told them, by means of inmate Hernandez, that there was an emergency.  (<u>Id.</u>)  The appeal was bypassed at the first level of review and was partially granted at the second level of review. (<u>Id.</u>)  An inquiry was conducted at the second level of review and no staff misconduct was found.  (<u>Id.</u>)  This appeal was denied at the Director's level of review.  (<u>Id.</u>)

## II.    **Procedural History**

Plaintiff filed the instant action <u>pro se</u> on August 21, 2009 in this Court.  In the Court's Order of Service, filed May 25, 2011, the Court dismissed Plaintiff's claims for injunctive relief as moot, since Plaintiff was no longer incarcerated at SVSP.  The Court found that Plaintiff had stated a cognizable Eighth Amendment claim of deliberate indifference to safety against Defendants Grady and Recio.  (May 25, 2011 Order at 3.)  The Court dismissed Plaintiff's deliberate indifference to safety claim against Defendant Montano, noting that Plaintiff had made no specific allegations against him.  The Court dismissed Plaintiff's deliberate indifference to serious medical needs claim against Defendants Grady, Recio, and Montano, noting that Plaintiff had failed to link these Defendants to his allegations regarding his medical needs.  Additionally, the Court dismissed Plaintiff's claim of supervisory liability against Defendant Evans, noting that Plaintiff did not specifically allege that Defendant Evans knew of the violations at issue and failed to take action.  Plaintiff was then given leave to amend the aforementioned claims in an amendment to the complaint to correct these deficiencies.  Finally, the Court exercised supplemental jurisdiction over Plaintiff's state law claims of negligence, medical malpractice, and intentional infliction of emotional distress.

On June 23, 2011, Plaintiff filed an amendment to the complaint ("Am. to Compl."), in which he reasserted his claims against Defendants Montano and Evans.  Plaintiff also reasserted his claim of deliberate indifference to serious medical needs against Defendants Grady, Recio, Montano, and Evans.  Plaintiff also requested the Court to reconsider its dismissal of his injunctive relief claim. Thereafter, the Court reviewed Plaintiff's amendment to the complaint and the claims contained therein.  The Court found cognizable claims of deliberate indifference to serious medical needs against Defendants Grady and Recio, and set a new briefing schedule for the filing of a supplemental motion for summary judgment as to the medical needs claim.  (June 6, 2012 Order at 2.)  The Court

United States District Court
For the Northern District of California

1   dismissed Plaintiff's claims against Defendants Montano and Evans.  Additionally, the Court denied

2   Plaintiff's request to reconsider the dismissal of his injunctive relief claim.

3       On September 28, 2011, Defendants Grady and Recio (hereinafter "Defendants") moved for

4   summary judgment as to the deliberate indifference to safety claim on the grounds that there is no

5   genuine issue as to any material fact, that they are entitled to judgment as a matter of law, that they

6   are entitled to qualified immunity, and that Plaintiff's state law claims are barred as untimely.

7   Plaintiff filed an opposition, and Defendants thereafter filed a reply.

8       On July 26, 2012, Defendants filed a supplemental motion for summary judgment as to the

9   deliberate indifference to medical needs claim, on the grounds that there was no genuine issue as to

10  any material fact, that they are entitled to judgment as a matter of law, and that they are entitled to

11  qualified immunity.  Plaintiff filed an opposition to Defendants' supplemental motion for summary

12  judgment, and Defendants filed their reply.

13      On August 15, 2012, Plaintiff filed a renewed motion to appoint counsel.

14      Since the time Defendants' first motion for summary judgment was submitted, a decision from

15  the Ninth Circuit Court of Appeals was issued that now requires pro se prisoner-plaintiffs to be given

16  "notice of what is required of them in order to oppose" summary judgment motions at the time of

17  filing of the motions.[3]  Woods v. Carey, 684 F.3d 934, 935, 940-41 (9th Cir. 2012).  Therefore, the

18  Court, pursuant to Woods and in accordance with the holding of Rand v. Rowland, 154 F.3d 952,

19  962-63 (9th Cir. 1998), explained to Plaintiff what he must do in order to oppose a motion for

20  summary judgment.  (July 12, 2012 Order at 1-2 (citing Woods, 684 F.3d at 935, 940-41).)  The Court

21  noted that Plaintiff had already filed an opposition to Defendants' first motion for summary judgment.

22  However, the Court set a new briefing schedule in order to allow for supplemental briefing in

23  accordance with Rand, which directed Plaintiff to file a supplemental opposition no later than August

24  13, 2012, and Defendants to file a supplemental reply no later than August 27, 2012.  To date, the

25  parties have not submitted any additional supplemental briefing pursuant to Rand.

26

27      [3] Because the Court gave Plaintiff a Rand notice as to Defendants' first motion for summary
    judgment, there was no need to give a similar notice as to Defendants' supplemental motion for
    summary judgment.  In addition, in its July 6, 2012 Order screening the amendment to the
28  complaint, the Court also gave Plaintiff a Rand notice.  Therefore, Plaintiff was well-aware of what
    was required of him in order to oppose Defendants' supplemental motion for summary judgment.

**United States District Court**
For the Northern District of California

**DISCUSSION**

**I.      Plaintiff's Renewed Motion for Appointment of Counsel**

In an Order dated July 12, 2012, the Court denied Plaintiff's first request for appointment of counsel.  Plaintiff now requests the Court to reconsider its earlier ruling denying appointment of counsel based upon the Defendants' pending motions for summary judgment.  Plaintiff claims that his limited ability to speak, read and write English prevents him from adequately responding to the motions for summary judgment.  Plaintiff also notes he is unable to afford counsel on his own and that the issues in the present case are complex.

There is no constitutional right to counsel in a civil case unless an indigent litigant may lose his physical liberty if he loses the litigation.  See Lassiter v. Dep't of Soc. Servs., 452 U.S. 18, 25 (1981).  The Court may seek counsel to represent an indigent litigant under 28 U.S.C. § 1915 only in "exceptional circumstances."  Palmer v. Valdez, 560 F.3d 965, 970 (9th Cir. 2009).  That determination requires an evaluation of both (1) the likelihood of success on the merits, and (2) the ability of plaintiff to articulate his claims pro se in light of the complexity of the legal issues involved. Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991).  Both of these factors must be viewed together before reaching a decision on a request for counsel under § 1915.  Id.

The Court, in its discretion, finds that the appointment of counsel is not warranted.  Plaintiff has adequately presented his claims in his complaint, in his amendment to the complaint, and in his two oppositions to Defendants' motions for summary judgment.  The Court additionally finds that the claims in Plaintiff's case are not particularly complex creating "exceptional circumstances" warranting the appointment of counsel in a civil case.

Accordingly, Plaintiff's renewed motion for appointment of counsel (Docket no. 36.) is DENIED.

**II.     Defendants' Motions for Summary Judgment**

      **A.      Standard of Review**

Summary judgment is properly granted where there is no genuine issue as to any material fact and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-

United States District Court
For the Northern District of California

1  23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

2  The moving party bears the burden of showing that there is no material factual dispute.

3  Therefore, the Court must regard as true the opposing party's evidence, if supported by affidavits or

4  other evidentiary material. Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289. The Court must

5  draw all reasonable inferences in favor of the party against whom summary judgment is sought.

6  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v.

7  Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991). A verified complaint may be

8  used as an opposing affidavit under Rule 56 of the Federal Rules of Civil Procedure, as long as it is

9  based on personal knowledge and sets forth specific facts admissible in evidence. Schroeder v.

10  McDonald, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995).

11  Material facts which would preclude entry of summary judgment are those which, under

12  applicable substantive law, may affect the outcome of the case. The substantive law will identify

13  which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

14  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively

15  demonstrate that no reasonable trier of fact could find other than for the moving party. But on an

16  issue for which the opposing party will have the burden of proof at trial, the moving party need only

17  point out "that there is an absence of evidence to support the nonmoving party's case." Celotex, 477

18  U.S. at 323.

19  If the moving party discharges its burden by showing an absence of evidence to support an

20  essential element of a claim or defense, it is not required to produce evidence showing the absence of

21  a material fact on such issues, or to support its motion with evidence negating the non-moving party's

22  claim. Id.; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990); Bhan v. NME Hosps.,

23  Inc., 929 F.2d 1404, 1409 (9th Cir. 1991), cert. denied, 502 U.S. 994 (1991). If the moving party

24  discharges its burden by negating an essential element of the non-moving party's claim or defense, it

25  must produce affirmative evidence of such negation. Nissan Fire & Marine Ins. Co. v. Fritz

26  Companies, Inc., 210 F.3d 1099, 1105 (9th Cir. 2000).

27  If the moving party does not meet its initial burden of production by either method, the non-

28  moving party is under no obligation to offer any evidence in support of its opposition. Id. This is true

**United States District Court**
For the Northern District of California

even though the non-moving party bears the ultimate burden of persuasion at trial. Id. at 1107.

If the moving party does meet its burden of production, the burden then shifts to the opposing party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." Bhan, 929 F.2d at 1409; Nissan, 210 F.3d at 1105. "[S]elf-serving affidavits are cognizable to establish a genuine issue of material fact so long as they state facts based on personal knowledge and are not too conclusory." Rodriguez v. Airborne Express, 265 F.3d 890, 902 (9th Cir. 2001). However, "[c]onclusory allegations unsupported by factual data cannot defeat summary judgment." Rivera v. Nat'l R.R. Passenger Corp., 331 F.3d 1074, 1078 (9th Cir. 2003).

It is not the task of the district court to scour the record in search of a genuine issue of triable fact. Keenan v. Allan, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. Id. If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party. See id.; see, e.g., Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1028-29 (9th Cir. 2001) (even if there is evidence in the court file which creates a genuine issue of material fact, a district court may grant summary judgment if the opposing papers do not include or conveniently refer to that evidence). Although the district court has discretion to consider materials in the court file not referenced in the opposing papers, it need not do so. Id. at 1029. "The district court need not examine the entire file for evidence establishing a genuine issue of fact." Id. at 1031.

## B.   Evidence Considered

A district court may only consider admissible evidence in ruling on a motion for summary judgment. See Fed. R. Civ. P. 56(e); Orr v. Bank of America, 285 F.3d 764, 773 (9th Cir. 2002). In support of their motions for summary judgment, declarations have been filed by Defendants Grady and Recio. Additionally, Defendants submitted the declaration of Marcelyn L. Nishimoto, Custodian of Records and Litigation Coordinator for California Out-Of-State Correctional Facility, authenticating certain records. Defendants' attorney, Deputy Attorney General Virginia Papan, also submitted a declaration authenticating certain exhibits. In support of their supplemental motion for summary judgment, supplemental declarations have been filed by Defendants Grady and Recio. Defendants have also filed the declaration of Wayne Herin, custodian of health records at SVSP.

United States District Court
For the Northern District of California

1   Attorney Papan also submitted a supplemental declaration authenticating certain exhibits.

2       As mentioned above, although Plaintiff filed oppositions to both of Defendants' motions for

3   summary judgment, he has not filed any additional supplemental briefing as he was instructed to by

4   the Court pursuant to Rand.  However, Plaintiff verified his complaint and amendment to the

5   complaint by signing them under penalty of perjury.  Therefore, for the purposes of this Order, the

6   Court will treat these pleadings as affidavits in opposition to Defendants' motions for summary

7   judgment under Rule 56.  See Schroeder, 55 F.3d at 460 & nn.10-11.

8       **C.       Analysis**

9            **1.       The Eighth Amendment in the Context of Prison Inmates**

10      The Eighth Amendment requires prison officials to provide all prisoners with the basic

11  necessities of life such as food, clothing, shelter, sanitation, medical care and personal safety.  See

12  Farmer v. Brennan, 511 U.S. 825, 832 (1994); DeShaney v. Winnebago County Dep't of Soc. Servs.,

13  489 U.S. 189, 199-200 (1989).  The Eighth Amendment's prohibition of cruel and unusual punishment

14  requires that a prison official take reasonable measures to provide for the safety of inmates.  See

15  Farmer, 511 U.S. at 834.  In particular, prison officials have an affirmative duty to protect inmates

16  from violence at the hands of other inmates.  See id. at 833.  The failure of a prison official to protect

17  inmates from attacks by other inmates or from dangerous conditions at the prison violates the Eighth

18  Amendment only when two requirements are met: (1) the objective component -- the deprivation

19  alleged must be sufficiently serious, see id. at 834 (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991);

20  and (2) the subjective component -- the prison official possesses a sufficiently culpable state of mind,

21  see id. (citing Wilson, 501 U.S. at 297).

22      In determining whether a deprivation of a basic necessity is sufficiently serious to satisfy the

23  objective component of an Eighth Amendment claim, a court must consider the circumstances, nature,

24  and duration of the deprivation.  Id. at 834 (citing Wilson, 501 U.S. at 298).  To satisfy the subjective

25  component, the requisite state of mind depends on the nature of the claim.  In prison-conditions cases,

26  the necessary state of mind is one of "deliberate indifference."  See, e.g., Allen v. Sakai, 48 F.3d

27  1082, 1087 (9th Cir. 1994) (outdoor exercise); Farmer, 511 U.S. at 834 (inmate safety); Estelle v.

28  Gamble, 429 U.S. 97, 104 (1976) (inmate health); Wilson, 501 U.S. at 302-03 (general conditions of

**United States District Court**
For the Northern District of California

1    confinement).

2       A prison official cannot be held liable under the Eighth Amendment for denying an inmate

3    humane conditions of confinement unless the standard for criminal recklessness is met, i.e., the

4    official knows of and disregards an excessive risk to inmate health or safety.  See Farmer, 511 U.S. at

5    837.  The official must both be aware of facts from which the inference could be drawn that a

6    substantial risk of serious harm exists, and he must also draw the inference.  See id.  An Eighth

7    Amendment claimant need not show, however, that a prison official acted or failed to act believing

8    that harm actually would befall an inmate; it is enough that the official acted or failed to act despite

9    his knowledge of a substantial risk of serious harm.  See id. at 842.  This is a question of fact.  See id.

10   A heightened pleading standard applies to the subjective component of Eighth Amendment claims:

11   the plaintiff must make non-conclusory allegations supporting an inference of unlawful intent.  Alfrey

12   v. United States, 276 F.3d 557, 567-68 (9th Cir. 2002) (applying standard to Bivens Eighth

13   Amendment claim).  Deliberate indifference describes a state of mind more blameworthy than

14   negligence.  Farmer, 511 U.S. at 835 (citing Estelle, 429, U.S. at 104).  Neither negligence nor gross

15   negligence will constitute deliberate indifference.  See Farmer, 511 U.S. at 835-36 & n.4; see also

16   Estelle, 429 U.S. at 106 (establishing that deliberate indifference requires more than negligence).

17

18       **2.      Deliberate Indifference to Plaintiff's Safety**

19       Plaintiff alleges that Defendants were deliberately indifferent to his safety because they did

20   not act on his request for a cell change prior to the March 4, 2008 incident.  Plaintiff further claims

21   that Defendants were deliberately indifferent to his safety because they ignored his request for help

22   just before the March 4, 2008 altercation with his cellmate.  Plaintiff argues that Defendant Recio

23   should have known that Plaintiff feared for his safety when he requested a cell change.  Additionally,

24   Plaintiff argues that Defendant Grady should have known that Plaintiff was in danger when inmate

25   Hernandez from the neighboring cell alerted Defendant Grady that there was an emergency in

26   Plaintiff's cell.

27       To be liable for a deliberate indifference claims stemming from the failure to prevent serious

28   harm to an inmate, Defendants Grady and Recio must have each individually known of and

consciously disregarded an excessive risk to Plaintiff's safety.  See Farmer, 511 U.S. at 837.  In particular, Defendants must have been both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and must have also drawn the inference.  See id.  A prison official need not "believe to a moral certainty that one inmate intends to attack another at a given place at a time certain before [he] is obligated to take steps to prevent such an assault."  Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986).  However, before being required to take action a prison official must have more than a "mere suspicion" that an attack will occur.  See e.g., id. at 460 (summary judgment appropriate as to defendants when plaintiff "failed to come forward with any facts showing that defendants had any reason to believe he would be attacked by the assailant").

Where, as here, Plaintiff seeks damages against Defendants, the "inquiry into causation must be individualized and focus on the duties and responsibilities of each individual Defendant whose acts or omissions are alleged to have caused a constitutional deprivation."  Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988).  When inmates, such as Plaintiff, seek to hold an individual Defendant personally liable for damages, the causation inquiry between the deliberate indifference and the Eighth Amendment deprivation must be more refined.  Id.  The focus must be on whether the individual Defendant was in a position to take steps to avert the harm, but failed to do so intentionally or with deliberate indifference.  Id.  In order to resolve this causation issue, a very individualized approach is applied which accounts for the duties, discretion, and means of each Defendant.  Id.  Sweeping conclusory allegations will not suffice to prevent summary judgment.  Id. at 634.  The prisoner must set forth specific facts as to each individual Defendant's deliberate indifference.  Id.

The record shows that Defendants did not act with deliberate indifference because they did not possess the requisite state of mind as outlined in Farmer, 511 U.S. at 835.  Prior to the March 4, 2008 incident, Defendant Recio was a Correctional Officer at SVSP and had interacted with Plaintiff, as needed, pursuant to the scope of his duties.  Defendant Recio claims that he could not have known, based on his previous interactions with Plaintiff, that Plaintiff had problems with his cellmate and feared for his safety.  Plaintiff alleges that he made a request for a cell change to Defendant Recio a few days before the incident occurred.  Plaintiff claims this request was made because he "feared for [his] safety."  (Compl. at 33.)  Defendant Recio responds that he does not recall such a request.

United States District Court
For the Northern District of California

1  Nonetheless, even if Plaintiff had requested a cell change, Plaintiff's request for a cell change -- even if

2  ostensibly for safety concerns -- is not sufficient to raise a triable issue of fact that he acted with

3  deliberate indifference.  See Farmer, 511 U.S. at 837.  Plaintiff did not apprise Defendant Recio that he

4  required a cell change because he was in imminent danger.  Nor did he specify the reason he feared for

5  his safety.  As for Defendant Recio, there is no evidence that he had previously been informed of any

6  prior altercations or incidents Plaintiff had with his cellmate or that they were enemies.  In addition,

7  Plaintiff's alleged fear of inmate Rodriguez is undermined by the fact that he characterized inmate

8  Rodriguez as an "old man" and admitted that he did not want to "fight back."  (Compl. at 33.)  As such,

9  Plaintiff's non-specific request for a cell change, standing alone, could not have alerted Defendant

10  Recio to the fact that Plaintiff was facing any imminent danger or that he was at risk of being attacked

11  by his cellmate.  Therefore, at most, Defendant Recio was negligent in not immediately acting on

12  Plaintiff's request for a cell change.

13  Moreover, there is no dispute that Defendant Recio was not on duty when the altercation

14  between Plaintiff and inmate Rodriguez transpired.  Therefore, Defendant Recio could not have been

15  deliberately indifferent to Plaintiff's safety during the altercation.

16  Defendant Grady also lacked the requisite subjective state of mind to satisfy the deliberate

17  indifference standard.  Prior to the March 4, 2008 incident, Defendant Grady was a Correctional

18  Officer at SVSP and had interacted with Plaintiff, as needed, pursuant to the scope of his duties.

19  Defendant Grady claims that he could not have known, based on his previous interactions with

20  Plaintiff, that Plaintiff's safety was endangered or that Plaintiff had any problems with inmate

21  Rodriguez.

22  Plaintiff alleges that immediately before the altercation took place, he asked his neighbor

23  inmate Hernandez to call Defendant Grady and tell him that there was an emergency.  Inmate Lopez

24  states that he observed inmate Hernandez speak to Defendant Grady, and that Defendant Grady merely

25  looked towards Plaintiff's cell and took no further action.  Additionally, Plaintiff claims that when

26  Defendant Grady looked towards his cell, Plaintiff gestured to Defendant Grady to come to his cell.

27  However, Defendant Grady took no further action.  Defendant Grady claims that he does not recall

28  inmate Hernandez relaying such information to him.  However, assuming arguendo that inmate

14

**United States District Court**
For the Northern District of California

1   Hernandez had informed Defendant Grady that there was an emergency, Defendant Grady's

2   knowledge of a potential emergency, absent further information as to the nature of the emergency, is

3   not sufficient to raise a triable issue of fact that he acted with deliberate indifference.  See Farmer, 511

4   U.S. at 837.  Inmate Hernandez did not tell Defendant Grady that Plaintiff required assistance because

5   he feared for his safety.  As Defendant Grady states in his declaration, inmates often tell correctional

6   officers that there is an emergency when there is no real danger or threat to their physical safety, and

7   the nature of the type of emergency that inmates report varies greatly.

8          Additionally, Plaintiff cannot point to any prior altercations or incidents with inmate

9   Rodriguez.  If Defendant Grady was aware of any such prior history, a request for emergency

10   assistance might have been sufficient to alert Defendant Grady to the fact that Plaintiff was in

11   imminent danger.  Inmate Hernandez's statement that there was an "emergency," even when coupled

12   with the fact that Plaintiff gestured to Defendant Grady to come to his cell, could not have alerted

13   Defendant Grady to the fact that Plaintiff feared for his safety or was in imminent danger absent

14   additional information.  Therefore, at most, Defendant Grady was negligent in not immediately acting

15   on the information relayed to him by inmate Hernandez.

16          Defendants were at most negligent in failing to assure the safety of Plaintiff.  Plaintiff has not

17   shown that either Defendant acted with criminal recklessness in dealing with Plaintiff's request for a

18   cell change or in dealing with inmate Hernandez's request for help.  Therefore, the Court finds that

19   Plaintiff has failed to raise a triable issue of fact as to whether Defendants acted with deliberate

20   indifference under the subjective prong of Farmer.  See 511 U.S. at 834.  Accordingly, Defendants are

21   entitled to summary judgment as a matter of law on Plaintiff's deliberate indifference to safety claim.

22   See Celotex Corp., 477 U.S. at 323.

23                  **3.      Deliberate Indifference to Plaintiff's Serious Medical Needs**

24          Plaintiff also alleges that Defendants were deliberately indifferent to his serious medical needs

25   by not providing him with medical care following the March 4, 2008 incident.  He states that

26   Defendants ignored his repeated requests for medical care and refused to provide him with the

27   necessary inmate medical care request forms.  Defendants counter that Plaintiff did not complain to

28   them of any injury following the March 4, 2008 incident.

**United States District Court**
For the Northern District of California

1    Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription

2    against cruel and unusual punishment.  See Estelle, 429 U.S. at 104; McGuckin v. Smith, 974 F.2d

3    1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Technologies, Inc. v. Miller, 104 F.3d

4    1133, 1136 (9th Cir. 1997) (en banc); Jones v. Johnson, 781 F.2d 769, 771 (9th Cir. 1986).  A

5    determination of "deliberate indifference" involves an examination of two elements: the seriousness of

6    the prisoner's medical need and the nature of the defendant's response to that need.  See McGuckin,

7    974 F.2d at 1059.

8    A "serious" medical need exists if the failure to treat a prisoner's condition could result in

9    further significant injury or the "unnecessary and wanton infliction of pain." McGuckin, 974 F.2d at

10   1059 (citing Estelle, 429 U.S. at 104).  The existence of an injury that a reasonable doctor or patient

11   would find important and worthy of comment or treatment; the presence of a medical condition that

12   significantly affects an individual's daily activities; or the existence of chronic and substantial pain are

13   examples of indications that a prisoner has a "serious" need for medical treatment. Id. at 1059-60

14   (citing Wood v. Housewright, 900 F.2d 1332, 1337-41 (9th Cir. 1990)).

15   A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of

16   serious harm and disregards that risk by failing to take reasonable steps to abate it.  Farmer, 511 U.S. at

17   837.  The prison official must not only "be aware of facts from which the inference could be drawn

18   that a substantial risk of serious harm exists," but he "must also draw the inference." Id.  If a prison

19   official should have been aware of the risk, but was not, then the official has not violated the Eighth

20   Amendment, no matter how severe the risk.  Gibson, 290 F.3d at 1188.

21   In order for deliberate indifference to be established, therefore, there must be a purposeful act

22   or failure to act on the part of the defendant and resulting harm.  See McGuckin, 974 F.2d at 1060;

23   Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985).[4]  A finding that the

24

25

26   [4]Additionally, the defendant's actions must be the cause of the injury suffered by the
     plaintiff.  Conn v. City of Reno, 591 F.3d 1081, 1098 (9th Cir. 2010), reinstated as modified by 658

27   F.3d 897 (9th Cir. 2011); see id. at 1098-1102 (reversing grant of summary judgment to transporting
     police officers where children of pre-trial detainee who committed suicide presented evidence that

28   transporting police officers (a) were subjectively aware the decedent was at acute risk of harm
     (suicide); (b) failed to respond properly to that risk by informing jail officials; and (c) such failure
     was both the actual and proximate cause of the decedent's suicide once at the jail).

**United States District Court**
For the Northern District of California

1   defendant's activities resulted in "substantial" harm to the prisoner is not necessary, however.  Neither

2   a finding that a defendant's actions are egregious nor that they resulted in significant injury to a

3   prisoner is required to establish a violation of the prisoner's federal constitutional rights, McGuckin,

4   974 F.2d at 1060, 1061 (citing Hudson v. McMillian, 503 U.S. 1, 7-10 (1992) (rejecting "significant

5   injury" requirement and noting that Constitution is violated "whether or not significant injury is

6   evident")), but the existence of serious harm tends to support an inmate's deliberate indifference

7   claims, Jett, 439 F.3d at 1096 (citing McGuckin, 974 at 1060).

8        Once the aforementioned prerequisites are satisfied, it is for the factfinder to determine whether

9   deliberate indifference was exhibited by the defendant.  Such indifference may appear when prison

10  officials deny, delay or intentionally interfere with medical treatment, or it may be shown in the way in

11  which prison officials provide medical care.  See McGuckin, 974 F.2d at 1062 (delay of seven months

12  in providing medical care during which medical condition was left virtually untreated and plaintiff was

13  forced to endure "unnecessary pain" sufficient to present colorable § 1983 claim); Wilhelm v. Rotman,

14  680 F.3d 1113, 1123 (9th Cir. 2012) (plaintiff stated a claim for deliberate indifference where

15  plaintiff's failure to receive prescribed treatment was due to defendant's failure to properly request

16  treatment and then inexplicably cancel second treatment request); Lolli v. County of Orange, 351 F.3d

17  410, 420-21 (9th Cir. 2003) (holding that a jury could infer that correctional officers' failure to provide

18  medical care in response to detainee's extreme behavior, sickly appearance and statements that he was

19  diabetic and needed food demonstrated deliberate indifference).

20       For summary judgment purposes, the Court accepts Plaintiff's allegations that he received no

21  care for his injuries and suffered for almost two months.  (Am. to Compl. at 3e.)  Plaintiff claims that

22  he suffered from severe pain and required an MRI of his lower back and of his head, a primary care

23  provider and medication for his pain.  (Id. at 8.)  However, Plaintiff's evidence does not show that

24  Defendants consciously disregarded his serious medical needs.  Therefore, Plaintiff fails to present

25  evidence that Defendants had the state of mind necessary to be liable for deliberate indifference.  See

26  Estelle, 429 U.S. at 104-05.

27       The evidence submitted by the parties demonstrates that Plaintiff was treated for his injuries

28  immediately after the March 4, 2008 incident.  Plaintiff presents no evidence indicating that

United States District Court
For the Northern District of California

1   Defendants, who are correctional officers, knew that he was in need of serious medical care after the

2   March 4, 2008 incident.  Upon reviewing the record, the Court finds that while Plaintiff was seen by a

3   nurse and a preliminary examination was performed, there was no indication that Plaintiff suffered

4   from any further injuries or was in need of any additional medical care -- beyond the care that he

5   received on the day of the March 4, 2008 incident -- as a result of the altercation with his cellmate.

6   Given these facts, it cannot be said that Defendants were deliberately indifferent because they knew

7   that Plaintiff faced a substantial risk of harm and disregarded that risk by failing to take reasonable

8   steps to abate it.  See Farmer, 511 U.S. at 837.

9        In sum, the Court has considered the materials submitted in support of and in opposition to

10   summary judgment and concludes that, even when the Court views all of the facts in the light most

11   favorable to Plaintiff, no reasonable jury could return a verdict for him and against Defendants.

12   Accordingly, the Court finds that Defendants are entitled to summary judgment on the deliberate

13   indifference to serious medical needs claim as a matter of law.  See Celotex Corp., 477 U.S. at 323.

14                **4.    Qualified Immunity**

15        Defendants claim that summary judgment is also proper in this case because they are entitled to

16   qualified immunity from liability for civil damages.  The defense of qualified immunity protects

17   "government officials . . . from liability for civil damages insofar as their conduct does not violate

18   clearly established statutory or constitutional rights of which a reasonable person would have known."

19   Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  The threshold question in qualified immunity analysis

20   is: "Taken in the light most favorable to the party asserting the inquiry, do the facts alleged show the

21   officer's conduct violated a constitutional right?"  Saucier v. Katz, 533 U.S. 194, 201 (2001).  A court

22   considering a claim of qualified immunity must determine whether the plaintiff has alleged the

23   deprivation of an actual constitutional right and whether such a right was "clearly established."

24   Pearson v. Callahan, 555 U.S. 223, 232 (2009) (overruling the sequence of the two-part test that

25   required determination of deprivation first and then whether such a right was clearly established, as

26   had been required by Saucier, and holding that a court may exercise its discretion in deciding which

27   prong to address first, in light of the particular circumstances of each case).  The relevant, dispositive

28   inquiry in determining whether a right is clearly established is whether it would be clear to a

United States District Court
For the Northern District of California

1  reasonable officer that her or his conduct was unlawful in the situation she or he confronted.  Saucier,

2  533 U.S. at 201-02.

3      Here, the Court has found no evidence that Defendants' actions rose to a level of a

4  constitutional violation.  However, assuming arguendo that Plaintiff was deprived of a constitutional

5  right, the Court considers whether Defendants' conduct was clearly unlawful.  Plaintiff alleges that

6  Defendants were deliberately indifferent to his safety by failing to promptly act on his request for a cell

7  change prior to the March 4, 2008 incident and by ignoring his request for emergency help on March

8  4, 2008.  Additionally, Plaintiff alleges that Defendants were deliberately indifferent to his serious

9  medical needs after the March 4, 2008 incident.

10      The Court finds that Defendants are entitled to qualified immunity because they have produced

11  sufficient evidence that a reasonable officer in their position would have believed their actions were

12  reasonable based on the circumstances presented to them.

13      Plaintiff's request to Defendant Recio for a cell change was based on the fact that Plaintiff

14  feared for his safety; however, such a request is vague because Plaintiff did not specify why he feared

15  for his safety.  Although Defendant Recio could have granted a cell change, it was not unreasonable

16  for him to believe, under the circumstances, that Plaintiff was not in any immediate danger or that he

17  felt threatened by his cellmate.  As previously discussed, there is no evidence that Defendant Recio

18  had previously been informed of any prior altercations between Plaintiff and his cellmate, nor is there

19  any indication that they were enemies.  Additionally, Plaintiff's alleged fear of inmate Rodriguez is

20  undermined by the fact that Plaintiff characterized inmate Rodriguez as an "old man" and admitted that

21  he did not want to "fight back" when inmate Rodriguez struck him.  (Compl. at 33.)  Therefore, a

22  reasonable officer in Defendant Recio's position would not have concluded that Plaintiff's fear for his

23  safety was related to any concerns he had about his cellmate.  Meanwhile, Plaintiff's request to

24  Defendant Grady for emergency assistance on March 4, 2008 was similarly vague.  Defendant Grady

25  did not act immediately to respond to the emergency because he claims that inmates frequently state

26  that there is an emergency when there is no danger to their physical safety and that the degrees of

27  inmate emergencies can "vary greatly."  (Decl. Grady ¶ 3.)  Given the fact that the aforementioned

28  requests were vague and that there was no history of animosity between Plaintiff and his cellmate, it

**United States District Court**
For the Northern District of California

1    would have been reasonable for Defendants not to act immediately on these requests.

2         With regard to Plaintiff's deliberate indifference to serious medical needs claim, Defendants

3    stated in their respective supplemental declarations that if an inmate has an urgent medical need, they

4    contact medical staff.  Additionally, Defendants stated that if the need is not urgent, then they will

5    provide the inmate with the proper medical care request forms.  More importantly, Defendants stated

6    that providing medical care is not their responsibility as correctional officers and that an inmate who is

7    in need of medical care has three alternative ways of requesting and obtaining that care: (1) the inmate

8    can submit a CDC 7362 form to request medical care; (2) an inmate out on the exercise yard can visit

9    the medical clinic or medication line with permission from a correctional officer; or (3) the inmate can

10   talk to medical staff who usually visit the housing units two times each day to distribute medications

11   and consult with inmates.  (Decl. Recio ¶ 8.)  Under the circumstances, and given the scope of their

12   duties, it would have bee reasonable for Defendants to believe that if Plaintiff was suffering from

13   serious injuries as a result of the March 4, 2008 incident, he would have exercised one of the

14   abovementioned three options in order to seek medical care.  In fact, Plaintiff did ultimately file a CDC

15   7362 form and consult with Nurse Fox about his injuries.

16        Because the law and circumstances on and following March 4, 2008 did not place Defendants

17   individually on notice that their conduct would be clearly unlawful, they are entitled to summary

18   judgment based on qualified immunity.  See Saucier, 533 U.S. at 202.

19        Accordingly, Defendants' motions for summary judgment are GRANTED as to all federal

20   claims.

21        **D.    State Law Claims**

22        Plaintiff's remaining claims under California law are DISMISSED under the authority of 28

23   U.S.C. § 1367(c)(3).  See Ove v. Gwinn, 264 F.3d 817, 826 (9th Cir. 2001) (court may decline to

24   exercise supplemental jurisdiction over related state-law claims under § 1367(c)(3) once it has

25   dismissed all claims over which it has original jurisdiction); see also Acri v. Varian Associates, Inc,

26   114 F.3d 999, 1000 (9th Cir. 1997) (although discretionary, claims under state law should be dismissed

27   when associated federal claims are dismissed before trial).  The dismissal is without

28

prejudice; Plaintiff may proceed with his state law claims in state court.  See Reynolds v. County of San Diego, 84 F.3d 1162, 1171 (9th Cir. 1996) (dismissal of pendent state claims following dismissal of federal claims must be without prejudice).

### CONCLUSION

In light of the foregoing, the Court orders as follows:

1.      Plaintiff's renewed motion for appointment of counsel (Docket no. 36) is DENIED.

2.      Defendants' motions for summary judgment (Docket nos. 16, 27) are GRANTED as to all federal claims.

3.      All claims under California law are DISMISSED without prejudice.

4.      The Clerk of the Court shall enter judgment in favor of Defendants Grady and Recio.

5.      The Clerk shall also terminate all pending motions and close the file.

6.      This Order terminates Docket nos. 16, 27, and 36.

IT IS SO ORDERED.

DATED: 9/28/12

_Saundra B Armstrong_
SAUNDRA BROWN ARMSTRONG
United States District Judge

United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN DISTRICT OF CALIFORNIA

ARMANDO A. MARROQUIN et al,

         Plaintiff,

  v.

MIKE EVANS et al,

         Defendant.

_____/

Case Number: CV09-03841 SBA

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on October 4, 2012, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Armundo A. Marroquin T-86698
L.P.C.C. N.A. 227
5501 N. L Palma Rd.
Eloy, AZ 85131

Dated: October 4, 2012

Richard W. Wieking, Clerk
By: Lisa Clark, Deputy Clerk

United States District Court
For the Northern District of California

G:\PRO-SE\SBA\CR.09\Marroquin3841.grantMSJ.wpd

22